**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

**NORINE VANESSA SHELTON,**

     **Plaintiff**

v.

**NANCY A. BERRYHILL,**

                                       Civil No. 2:17–CV–609

     **Acting Commissioner,
Social Security
Administration,
Defendant.**

## ORDER

    This matter comes before the Court on Norine Vanessa Shelton's ("Plaintiff") Objections to the Report and Recommendation of the Magistrate Judge ("Plaintiff's Objections"), ECF No. 36, filed in response to United States Magistrate Judge Robert J. Krask's Report and Recommendation, entered on January 24, 2019, ECF No. 35. For the reasons stated herein, the Court: (1) **ACCEPTS** the R&R, ECF No. 35; (2) **AFFIRMS** the decision of the Commissioner of the Social Security Administration ("Defendant" or "Commissioner"); (3) **DENIES** Plaintiff's Second Motion for Summary Judgment, ECF No. 30; and (4) **GRANTS** Defendant's Second Motion for Summary Judgment. ECF No. 32.

## Contents

I.      PROCEDURAL BACKGROUND ........................................................................2

II.    RELEVANT FACTUAL BACKGROUND.............................................................4

    A.    PLAINTIFF'S BACKGROUND .................................................................4

    B.    PLAINTIFF'S SCHOOL RECORDS ........................................................5

    C.    STATEMENTS BY PLAINTIFF AND FAMILY MEMBERS ...........................8

    D.    PLAINTIFF'S CONSULTATIVE EXAMINATION .......................................9

  E.  STATE AGENCY PHYSICIAN REVIEW ..................................................12

  F.  TESTIMONY BEFORE THE ALJ ......................................................13

III.  THE ALJ'S DECISION ......................................................................15

IV.  STANDARD OF REVIEW ..................................................................18

V.  ANALYSIS ........................................................................................20

  A.  OBJECTION ONE: MS. SHELTON DID NOT WAIVE HER RIGHT TO CHALLENGE THE APPOINTMENT OF THE ALJ WHO ADJUDICATED HER CLAIM AS A VIOLATION OF THE APPOINTMENTS CLAUSE ..................21

  B.  OBJECTION TWO: THE MAGISTRATE JUDGE'S FINDING THAT MS. SHELTON DOES NOT MEET THE CRITERIA OF 12.05 SHOULD BE REJECTED ..........23

VI.  CONCLUSION ..................................................................................25

## I.  PROCEDURAL BACKGROUND[1]

Shelton protectively filed an application for supplemental security income on February 6, 2014. R. 10, 175–79.[2] Shelton alleges she became disabled on December 16, 2013, due to open heart surgery, a learning disability, high cholesterol, high blood pressure, pancreatitis, depression, and asthma. R. 222. The Commissioner denied Shelton's application on June 24, 2014, and, upon reconsideration, on October 30, 2014. R. 62–74, 76–88, 90–94. At Shelton's request, an Administrative Law Judge ("ALJ") heard the matter on August 25, 2016, and at the hearing received testimony from Shelton (who was represented by counsel), Shelton's mother, and an impartial vocational expert ("VE"). R. 33–61. On October 6, 2016, ALJ Stewart Goldstein denied Shelton's claims, finding that she had not been under a disability since February 6, 2014, the date her application was filed. R. 10–21.

On September 22, 2017, the Appeals Council denied Shelton's request for review of the ALJ's decision. R. 1–5. Therefore, the ALJ's decision stands as the final decision of the Commissioner

---

[1] Having conducted a thorough review of the record, the Court concludes that the Magistrate Judge's procedural and factual summation is accurate. Nevertheless, the Court has included a summation herein for clarity.

[2] Page citations are to the administrative record previously filed by the Commissioner.

for purposes of judicial review. <u>See</u> 42 U.S.C. §§ 405(h), 1383(c)(3); 20 C.F.R. § 416.1481.

Having exhausted all administrative remedies, Plaintiff filed a complaint with this Court on November 28, 2017. ECF No. 3. Defendant answered on February 16, 2018. ECF No. 8. The parties filed cross motions for summary judgment addressing whether substantial evidence in the record supports the decision of the ALJ. ECF Nos. 11–12, 14–17.

On September 25, 2018, Plaintiff filed a motion for leave to amend the complaint, with a memorandum in support and a proposed amended complaint attached. ECF Nos. 18–19. In addition to the argument in count one that the decision of the ALJ is not supported by substantial evidence, Plaintiff alleges in count two of the first amended complaint that the Defendant's decision to deny her SSI benefits "is unconstitutional and void because the agency's disability determination of this case violates the Appointments Clause and constitutional removal requirements." First Am. Compl. ¶ 10, ECF No. 25 at 2. This allegation is premised upon the holding in <u>Lucia v. SEC</u>, 138 S. Ct. 2044 (2018), that ALJs for the Securities and Exchange Commission are "'Officers' under the Appointments Clause and cannot preside over hearings unless they are hired consistent with the Appointments Clause." Mem. in Suppt. Mot. For Leave to Am. 2–3, ECF No. 19. The Court granted Plaintiff leave to amend the complaint, and the amended complaint was filed on October 23, 2018. ECF Nos. 23, 25. Defendant answered the amended complaint on November 5, 2018. ECF No. 26. On the same day, Plaintiff and Defendant withdrew the motions for summary judgment that addressed the original complaint. ECF Nos. 27, 28.

In compliance with the Court's second scheduling order, the parties filed cross motions for summary judgment addressing the amended complaint, which were fully briefed on January 22,

2019. ECF Nos. 30–34.[3]

The matter was then referred to United States Magistrate Judge Robert J. Krask pursuant

to: (1) 28 U.S.C. § 636(b)(1)(B) and (C); (2) Rule 72(b) of the Federal Rules of Civil Procedure;

(3) Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, and

(4) the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate

Judges. Magistrate Judge Krask issued his R&R with respect to the parties' opposing motions on

January 24, 2019. R&R, ECF No. 35. The R&R recommends that this Court DENY Plaintiff's

Second Motion for Summary Judgment, AFFIRM the final decision of Nancy A. Berryhill, the

Acting Commissioner of the Social Security Administration ("SSA"), and GRANT the

Commissioner's Second Motion for Summary Judgment. Id. Plaintiff filed her objections to the

R&R on February 7, 2019. ECF No. 36. Defendant filed her Response to Plaintiff's Objections

on March 7, 2019. ECF No. 39. Plaintiff did not file a reply.

## II.     RELEVANT FACTUAL BACKGROUND[4]

### A. <u>Plaintiff's Background</u>

Plaintiff was born in 1964 and was 49 years old on December 16, 2014, the onset date of

her alleged disability. R. 175. Plaintiff completed the seventh grade, but ceased attending school

at the age of 17, prior to completing the eighth grade. R. 41, 53.

Plaintiff worked in housekeeping at several different hotels from 2008 through 2013. R.

250. Plaintiff generally worked five hours per day, six days per week on a seasonal basis. R. 44–

45, 190, 251. Plaintiff stopped working in September 2013, when her seasonal position ended. R.

---

[3] Plaintiff did not file a reply, and the time to do so expired on January 22, 2019.
[4] As Magistrate Judge Krask noted, the only issue raised in this appeal is whether the ALJ erred in determining Plaintiff did not meet the criteria of listing 12.05 for a mental disability. Accordingly, only those facts pertinent to Plaintiff's mental health are recited here.

222. In December 2013, Plaintiff suffered a heart attack, which led to her application for disability benefits. R. 222.

## B. Plaintiff's School Records

An attendance audit report indicates that Plaintiff repeated the first and third grades, R. 1028, and this is consistent with the dates and grade levels listed in her school records.

Notes from Plaintiff's elementary transcript indicate that, in the first grade,[5] Plaintiff had some difficulty adjusting at first, but came "a long way" socially, was working hard, and was getting along with her classmates. R. 281, 1034. In second grade, her teacher noted that she was "very talkative and bossy," "love[d] attention," and although she was "not a fast worker," she "trie[d] very hard to do her best." Id. Her third–grade teacher noted that she "had difficulty in class because she did not follow directions well," but that "[w]hen she settled [down] to work she was able to do a pretty good job." Id.

Results of a "Metropolitan Readiness Test" administered when Plaintiff was seven years old,[6] and in her second year of first grade, indicate a percentile rank of 35 and a letter rating of C. R. 267, 272, 1019, 1024.

Plaintiff scored a 96 on a Kuhlmann–Anderson intelligence test administered in September 1972, when she was eight years old and in the second grade. R. 269, 1021. There is no indication of who administered the test. Plaintiff's birthday was again incorrectly listed as 1965, and her age incorrectly listed as seven years old. Id. When the same test was administered one year later, however, Plaintiff scored a 75. R. 271, 1023. That test was administered and scored by her third-

---

[5] The transcript notes are not dated. R. 281, 1034. As a result, it is not clear whether the notes from Plaintiff's first and third grade teachers are from her first or second year in each grade.

[6] As with many of her school records, this form incorrectly indicates that Plaintiff was born in September 1965. R. 267, 1019. Accordingly, the form incorrectly states that Plaintiff was six–years–old when the test was administered, one year younger than her actual age. Id.

grade teacher, who noted that Plaintiff "could not follow directions." Id. Her birth date and age were again misstated. Id.

Testing of Plaintiff's reading ability was performed in February 1973 when Plaintiff was eight years old. R. 1020. Plaintiff scored a 77 out of 89 on her decoding skills and scored 80 out of 90 on comprehension skills. R. 268, 1020. Two months later, in April 1973, Plaintiff scored 71 out of 92 on decoding skills and 80 out of 90 on comprehension skills. Id. A checklist grade sheet completed for the school years ending in 1973 and 1975–78 indicate whether Plaintiff was "progressing slowly," "progressing," or "progressing rapidly" in several core subjects including reading, oral language, written language, mathematics, social studies, and science. R. 276–77, 1029–30. A separate sheet tracked her social development, including work habits, sociability, and personal growth for the same years. R. 279, 1032. Plaintiff was progressing slowly in every core subject during second grade, the 1972–73 school year, and her teacher only checked one out of 18 characteristics of social development evaluated, indicating that Plaintiff showed courtesy and consideration. R. 276–77, 279, 1029–30, 1032.

For the 1974–75 school year, Plaintiff's second year in third grade, Plaintiff was "progressing slowly" or "progressing" in the core subjects, and had checks for several areas of social development, including striving to complete work, working well independently, participating in group discussions, exercising leadership, and showing initiative. Id.

Plaintiff scored between the 2nd and 25th percentile for all subjects tested on an SRA assessment[7] conducted in October 1975, when Plaintiff was 11 years old and beginning the fourth grade. R. 284, 1037. The checklist completed the end of the 1975–76 school year indicated Plaintiff was "progressing" in almost all subject areas, "progressing rapidly" in social studies and

---

[7] A standardized test developed by Science Research Associates (SRA).

science, and her teacher checked all 18 characteristics of social development with respect to work habits, sociability, and personal growth. R. 276–77, 279, 1029–30, 1032.

A standardized test conducted in 1977, when Plaintiff was in the fifth-grade, indicates a grade equivalent score of 2.2 in reading comprehension, a 4.4 in math comprehension, and a composite score of 3.4. R. 260, 1009. Her teacher indicated that she was "progressing" with respect to all core subjects, and checked all 18 characteristics evaluated with respect to work habits, sociability, and personal growth. R. 276–77, 279, 1029–30,1032.

For the 1977–78 school year, when she was thirteen years old, Plaintiff was "progressing" with respect to most subject areas, and her teacher checked 10 of the 18 characteristics evaluated with respect to work habits, sociability, and personal growth. Id. Standardized testing during this sixth-grade year indicated a grade equivalent score of 4.6 in reading comprehension, a 4.9 in math comprehension, and a composite score of 4.3. R. 274, 1026.

During the 1978–79 school year, when Plaintiff was fourteen years old and in the seventh grade, she received 13 "D"s and 11 "E"s over the course of the four quarters. R. 261, 1010.[8] Plaintiff was absent 68 days during the school year. R. 262, 1011. Plaintiff received 2.25 credits towards graduation for her passing grades, which are the only credits Plaintiff earned towards graduation. R. 261–62, 1010–11.

An SRA assessment survey conducted in October 1979, when Plaintiff was 15 years old and beginning the eighth grade, reflects that Plaintiff scored between the 1st and 20th percentile for all subjects tested. R. 282, 1035. Plaintiff was absent 101 days over the course of the school year, received all "E"s, and earned no credit towards graduation. R. 261–62, 1010–11.

---

[8] This report includes a column on the right in which all grades marked "Final" are "E"s. R. 261, 1010. The name at the top of the chart providing these final grades is "James Lawre Shelton." Id. It does not appear that these final grades are those earned by Plaintiff.

Over the 1980–81 school year, when Plaintiff was 16 years old, she was absent 60 days, and earned all "E"s, with no credit earned towards graduation. Id.

A form completed by Plaintiff's guidance counselor in March 1982, when Plaintiff was 17 years old, reflects "Grade 9" and indicates that Plaintiff had 2.25 credits "earned to date," and that Plaintiff was not "presently in attendance." R. 286, 1040. Out of 12.75 credits attempted, Plaintiff only earned 2.25. R. 261–62, 1010–11.

### C. Statements by Plaintiff and Family Members

On March 21, 2014, Plaintiff was interviewed at the Social Security field office in connection with her application for benefits. R. 218–20. The interviewer noted that Plaintiff was "unable to read and understand the questions asked during the interview," and "stated that her mom is the one who helps her all the time and she could not come" to the office that day. R. 219. Plaintiff indicated that she had stopped working on September 4, 2013, because her work was seasonal. R. 222. She further stated that, on December 16, 2013, her condition became severe enough to keep her from working. Id.

Plaintiff completed a function report form on April 9, 2014, with the help of her friend, Brian Pinner. R. 242–49. She indicated that she lived with her mother and family. R. 242. She reported going outside daily unless there is rain or snow and that she can go out alone, but that she does not drive. R. 245. Plaintiff stated that she can count change, but that she cannot pay bills, handle a savings account, or use a checkbook because she does not have a job. Id. She rated her ability to get along with authority figures and handle changes in routine as good, while her ability to handle stress was bad. R. 247. On a checklist, she indicated that her impairments affect her understanding, following instructions, memory, completing tasks, and concentration. R. 248. In a work history report completed the same day, Plaintiff stated she had previously worked in housekeeping or cleaning at several hotels from 2008 through 2013. R. 250. She generally worked

8

five hours per day for six days per week. R. 251.

In disability reports dated July 9, 2014 and November 18, 2014, Plaintiff's attorney, John O. Goss, Esq., represented that there had been no change in Plaintiff's condition since the April 2014 report was completed. R. 291, 304.

### D. Plaintiff's Consultative Examination

A psychological evaluation of Plaintiff was conducted by consultative examiner and clinical psychologist Karen M. Armstrong, Ph.D., on June 12, 2014. R. 742–45. Plaintiff was accompanied by her friend, Brian Pinner, who was not interviewed. R. 742. Both Plaintiff and her friend were driven to the evaluation and dropped off by Plaintiff's mother. Id.

Following a review of Plaintiff's school records. Dr. Armstrong noted the following: "academic skills were well below her grade placement level in elementary and subsequent grade levels"; "[m]ath skills consistently tracked higher than reading and written language"; "retained in grade once and placed in grade subsequently"; and, "one IQ score of 96." Id.

During her interview, Plaintiff reported that she had previously worked in housekeeping in several hotels, she was able to keep a job, and her best job was one that she maintained for five years. Id. Plaintiff indicated she stayed to herself and did not associate much with coworkers, responded appropriately to supervision, and did not have job conflicts. Id. Plaintiff reported feeling that others made fun of her, or took advantage of her, due to her learning problems. R. 742–43. Plaintiff reported that she could take the bus to get places, though she would need to ask someone when it was time to get off. R. 742. Plaintiff stated that she had last worked the previous year, and could not currently work due to her cardiac problems. Id.

Plaintiff reported a history of substance and alcohol abuse, but that she had attended a substance abuse treatment program, stayed in a halfway house for one year, had attended Alcoholics Anonymous and Narcotics Anonymous, and was currently in recovery through her

9

church.  Id.  She took medication for anxiety and reported suffering from panic attacks and depression.  R. 742–43.

Plaintiff reported she had resided with her mother for the previous five years, and that she could care for her basic personal needs and perform basic household tasks.  R. 742.  Plaintiff related that her memory is "shot," she does not pay attention well, she has difficulty completing tasks, she is poor with financial management, and counts money on her fingers.  Id.  Her mother keeps up with her appointments, manages some of her money, and teaches her money management skills.  Id.  Plaintiff indicated that she is poor with reading and spelling, but better with math, and that she dropped out of school because they were attempting to put her into special education classes, which she did not want to attend.  R. 743.  She has two children, ages 32 or 33 and 27, and she has some contact with them.  Id.

Dr. Armstrong found Plaintiff was appropriately attired and groomed, was oriented appropriately and knew personal information, used functionally receptive and expressive language when giving her history and during test instruction, had relevant speech content, and was concrete in thinking and problem solving.  Id.  She made good eye contact, had a passive demeanor, had appropriate social boundaries, and was cooperative.  Id.  Plaintiff's vocabulary, general knowledge, and arithmetic computation were below average, and she was easily flustered and had low confidence in her skills.  Id.

Dr. Armstrong noted Plaintiff's short attention span, low persistence, and limited motivation, necessitating prompts to keep working during testing.  Id.  While Plaintiff could focus adequately and ultimately gave a good effort on all tasks, she required continual support and her work pace was slow.  Id.

Plaintiff presented as "rather sad," with a dysphoric demeanor, and was anxious with many

10

questions about the testing. Id. Plaintiff had limited insight and had a history of poor social judgments, but had no specific limitations in self–preservation skills. Id. She understood conventional reasoning, and responded conventionally to comprehension questions such as why seatbelts are needed or what to do with a found wallet. Id. Plaintiff had logical and linear thought progression and no evidence of psychotic thinking. Id.

Dr. Armstrong administered the Wechsler Adult Intelligence Scale–IV, and Plaintiff obtained a full–scale score of 59, with a verbal comprehension score of 61, perceptual reasoning score of 75, working memory score of 58, processing speed score of 65, and a general ability index of 65. R. 744. The "functioning range" for each of these scores was "extremely low," with the exception of perceptual reasoning, which was "borderline." Id. Dr. Armstrong noted that the "[v]alidity of the test results was adequate," and she predicted with a 95 percent confidence level that Plaintiff would obtain a full–scale score of 56 to 65 on repeated assessments. Id. Dr. Armstrong indicated: "[i]t seemed likely that her cognitive skills are well below average, though not necessarily as low as her obtained score," and "[h]er working memory index seemed lower than her ability to recall personal data and her ability to perform informal memory tasks." Id. Dr. Armstrong indicated Plaintiff's "anxiety and her dysphoria seemed likely to interfere with cognitive efficiency," and she "does seem to have difficulty with coping." Id.

Dr. Armstrong concluded that Plaintiff "is provisionally diagnosed with an intellectual disability," although "[i]t is not clear that she was functioning at quite this low a level during the developmental period, as required by the diagnosis," and "her functional skills seemed better developed than her academic skills." Id. Dr. Armstrong noted that Plaintiff claimed to have had her current problems for many years, had "worked competitively" cleaning hotels despite them, and "seems to have adequate cognitive skills to continue to perform this type of simple and

11

repetitive work." R. 744–45. Dr. Armstrong commented that Plaintiff could take public transportation and perform other daily living tasks relatively independently, although reporting needing help with money management. R. 744. Dr. Armstrong found the limitations in Plaintiff's ability to work "do not seem to reflect her cognitive, affective, or adaptive skills," but rather elevated blood pressure and cardiac problems, although her chronic anxiety "probably interact[s] with her medical issues to lower her vocational efficiency." R. 745. Dr. Armstrong reported that Plaintiff had "moderate to significant limitations in her ability to perform competitive work on a consistent basis"; would not work well with the public due to her low vocabulary, low stress tolerance, and anxiety; and "would likely need social support and encouragement in a vocational setting." Id.

### E. State Agency Physician Review

On June 19, 2014, Julie Jennings, Ph.D., reviewed the record and found Plaintiff was moderately limited in understanding and memory, noting Plaintiff's low IQ, but finding that her "overall functioning is higher than scores would indicate." R. 70, 72. Assigning great weight to Dr. Armstrong's opinion, Dr. Jennings concurred that Plaintiff, "seems to have adequate cognitive skills to continue to perform simple and repetitive work. The limitations in her ability to work do not seem to reflect her cognitive, affective, or adaptive skills. She reported having had her current problems for many years and has been able to work despite them." R. 69. Dr. Jennings found that Plaintiff had a history of "functioning in the community, [and] working part time for a long period of employment," and that evidence in the record showed "she has been able to function at a higher level than current IQ scores would indicate." R. 71. Dr. Jennings indicated Plaintiff was moderately limited in her social interactions due to depression, anxiety, and a low IQ. Id. Dr. Jennings concluded that Plaintiff "has significant work history and has worked competitively cleaning hotels." R. 72. Referencing Dr. Armstrong's notes, Dr. Jennings found Plaintiff has

"adequate cognitive skills to continue to perform this type of simple and repetitive work." Id.

On June 24, 2014, James Darden, M.D., reviewed Plaintiff's record and noted that her "history of learning problems" "affect[s her] ability to perform some work activities," but that she "should be able to take care of personal needs, understand and follow simple directions, and perform simple, routine work." R. 74.

Jeanne Buyck, Ph.D., concurred with Dr. Jennings' opinion on October 29, 2014, and Jack Hutcheson, M.D., concurred with Dr. Darden's opinion on October 30, 2014. R. 84–88.

### F. Testimony Before the ALJ

*(Norine Vanessa Shelton)*

Plaintiff testified that she lived with her mother, brother, and her mother's husband. R. 40. She explained that she previously had a driver's license after passing an oral examination and was able to drive, but that she no longer had a license. R. 40–41. Plaintiff testified that she started having problems in school during seventh grade. R. 41. She completed the seventh grade and began, but did not complete, the eighth grade. Id. She was 17 years old when she stopped attending school. R. 53.

Plaintiff has difficulty reading and writing. R. 40–42. Plaintiff explained that she can read some words in a children's book, but cannot read the newspaper or a menu. R. 41. She can write, but has trouble with spelling. R. 42. While she can write and understand what she wrote, others would not be able to read what she wrote. Id.

Plaintiff testified that she last worked cleaning rooms at a hotel in 2013. R. 43–44. She stated that it was a seasonal position at the oceanfront. R. 44. She performed similar work at three hotels prior to that, also on a seasonal basis. R. 45. Plaintiff indicated that, prior to working at the hotels, she worked at fast–food restaurants, but had difficulty working the register. Id. When questioned by her counsel regarding her frequent job changes, Plaintiff explained that employers

13

"let [her] go" because she was too slow or could not "catch on." R. 52.

Plaintiff indicated that she became disabled in December 2013 after suffering a heart attack and undergoing surgery. R. 42. Plaintiff stated that she is prevented from working due to pain in her chest and left arm, her pancreas, shortness of breath, and anxiety. R. 47–49. Plaintiff testified that she stopped abusing cocaine in 2013 and had one relapse in 2014. R. 46–47. She also indicated that she suffered from shortness of breath, anxiety, asthma and bronchitis. R. 48, 53. Plaintiff testified that medication, such as albuterol and nitroglycerin, helped and did not cause any problems. R. 48–49, 53.

Plaintiff testified that she could cook Oodles of Noodles and fry chicken, but that her mother did most of the cooking. R. 50. Her mother drove her to the grocery store, helped pick out food, and paid with Plaintiff's SNAP card. R. 50–51. The only way Plaintiff could shop on her own is if her mother had taken her previously to show her the items she needed to buy. R. 41. Plaintiff stated that she attended church two times each month and got along with the people there. R. 51. She also visited with her family. Id. She had a cellphone, which her daughter showed her how to work. R. 51–52.

*(Barbara Williams)*

Plaintiff's mother, Barbara Williams, testified briefly and corroborated Plaintiff's testimony that she stopped using cocaine in 2013, except for one relapse in 2014. R. 54.

*(Vocational Expert – Paula Day)*

Paula Day, a vocational expert, was asked whether any work existed for a hypothetical person with Plaintiff's age, education, and work experience. R. 55–57. More specifically, Day was asked to opine about a person closely approaching advanced age with a limited seventh grade education and a limited ability to read and write, who was able to perform light work activity, with

14

the following limitations: (1) she could not perform a job that requires her to read or write; (2) she is limited to performing simple, routine tasks, and unskilled work that she would not have to perform at a production rate pace; (3) she would not have to interact with the public or coworkers on more than an occasional and superficial basis; and (4) where changes in routine, such as the addition of new or more complex tasks, would not occur more than once per month on average, and she would be given extra supervision at those times. Id. Ms. Day testified that such a person could perform work as a motel housekeeper, mail order inserter, and cafeteria attendant, which jobs exist in significant numbers in the national economy. R. 57. Ms. Day then testified that such jobs would not exist for an individual who had the additional limitation that the person "is unable to function at 85 percent or more of the efficiency of an impaired worker." Id. Ms. Day further testified that competitive work would be precluded for someone who needed ongoing supervision to stay on task or complete a job. R. 58–59.

## III.   THE ALJ'S DECISION

To evaluate Plaintiff's claim of disability, the ALJ followed the sequential five-step analysis set forth in the SSA's regulations for determining whether an individual is disabled. See 20 C.F.R. § 416.920(a). Specifically, the ALJ considered whether Plaintiff: (1) was engaged in substantial gainful activity; (2) had a severe impairment; (3) had an impairment that meets or medically equals a condition within the SSA's listing of official impairments; (4) has the residual functional capacity to perform the requirements of her past relevant work; and (5) is able to do any other work considering her residual functional capacity, age, education, and work experience. R. 11–21.

First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 6, 2014, the date of her application for benefits. R. 12.

At step two, the ALJ found that Plaintiff had the following severe impairments: coronary artery disease, "status-post non-ST segment elevation myocardial infarction (NSTEMI),"

hypertension, polysubstance abuse, pancreatitis, unspecified anxiety disorder, unspecified depressive disorder, borderline IQ, and asthma. R. 12–13. The ALJ classified any additional impairments, including congestive heart failure, gynecological impairments, finger swelling, and shoulder pain, as non-severe, because they responded to treatment or medication, required no significant medical treatment, had no more than a minimal effect on Plaintiff's ability to meet the basic demands of work activity, or did not continuously impose functional limitations upon her. Id.

Next, the ALJ determined that Plaintiff's severe impairments, either singly or in combination (along with her other conditions), failed to meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, as required for a finding of disability at step three. R. 13–15.

With respect to Plaintiff's mental impairment, the ALJ found Plaintiff did not meet listing 12.05, because the records do not indicate that her low IQ score was present before the age of twenty-two. R. 14. The ALJ found that Plaintiff was able to work in the past, could live alone, and could perform personal care. Id. The ALJ stated that her school records showed a 2.25 grade point average,[9] and her assessments showed that she had rudimentary reading skills, could follow directions, and interact with her peers. Id. The ALJ noted that Plaintiff scored a 96 on her IQ test as a child, and that the state agency examiners found that her activities "suggest that she retained a higher IQ than the testing indicated." Id.

The ALJ next found that Shelton possessed the residual functional capacity ("RFC") to perform light work, see 20 C.F.R. § 416.967(b), subject to the limitations that she: (a) cannot

---

[9] It appears the ALJ was referencing school records reporting that Plaintiff had earned a total of 2.25 credits towards graduation as of the Spring of 1982. R. 262, 286, 1011, 1040.

perform a job that requires reading and writing, as she can "only perform basic reading and writing"; (b) can perform simple, routine tasks; (c) "is limited to performing unskilled work that does not require her to work at a production rate pace typically found on an assembly line or in piecework"; (d) "can have occasional and superficial social interaction with the public and coworkers"; and (e) can only have "[c]hanges in routine with the addition of new or more complex tasks" once per month on average "and she needs a few extra minutes of supervision at those times of change." R. 15.

In support of this RFC, the ALJ summarized Dr. Armstrong's findings made following the consultative exam. R. 17–18. The ALJ noted Plaintiff's difficulty with basic mathematics, slow work pace, short attention span, and sad demeanor, but also her adequate eye contact, pleasant and cooperative demeanor, and logical thought processes. Id. The ALJ listed each sub-score Plaintiff received on the WAIS-IV test, including the full-scale IQ of 59, and noted that the scores were classified as borderline to extremely low. R. 17. The ALJ noted Plaintiff's childhood IQ test score of 96. Id.

The ALJ accorded Dr. Armstrong's opinions significant weight. R. 19. The ALJ summarized Dr. Armstrong's opinion that Plaintiff: (1) had "functional skills [that] were better than her academic skills," (2) "worked competitively in the past," (3) "used public transportation," (4) "completed activities of daily living independently," and (5) "had adequate cognitive skills to perform simple and repetitive work such as cleaning hotels" with "limited interpersonal contact." R. 17–19.

The ALJ also assigned significant weight to the opinion of the state agency psychologist that Plaintiff had moderate limitations in performing activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace. R. 19. The ALJ noted that the

record reflected "very little treatment for any mental impairments." Id. The ALJ commented that Plaintiff was cooperative and pleasant during her examinations, able to interact with family and friends at church, able to recall dates during her hearing testimony, able to use public transportation, could express her needs, and could live alone. Id.

At step four, the ALJ determined that Plaintiff had no past relevant work. R. 20. Finally, at step five, and after considering her age, education, work experience, and RFC, the ALJ found that Plaintiff could perform jobs, such as a motel housekeeper, mail order inserter, and cafeteria attendant, which existed in significant numbers in the national economy. R. 20–21. Accordingly, the ALJ concluded that Plaintiff had not been disabled since February 6, 2014, the date her application was filed. R. 21.

## IV. STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, the Court "must determine de novo any part of a magistrate judge's recommendation that has been properly objected to." Fed. R. Civ. P. 72(b)(3). Upon review, the Court may either "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id. As this Court has noted, "[t]he Court may reject perfunctory or rehashed objections to R&R's that amount to 'a second opportunity to present the arguments already considered by the Magistrate–Judge.'" Hartfield v. Colvin, No. 2:16–CV–431, 2017 WL 4269969, at *7 (E.D. Va. Sep. 26, 2017) (citing Gonzalez–Ramos v. Empresas Berrios, Inc., 360 F. Supp. 2d 373, 376 (D. Puerto Rico 2005)); see also Nichols v. Colvin, 100 F. Supp. 3d 487, 497 (E.D. Va. 2015) (holding that "[a] mere restatement of the arguments raised in the summary judgment filings does not constitute an objection for the purposes of district court review.").

"Determination of eligibility for social security benefits involves a five–step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002); see also Johnson v. Barnhart, 434 F.3d 650,

653 n.1 (4th Cir. 2005) (per curiam). "If a determination of disability can be made at any step, the Commissioner need not analyze subsequent steps." Hancock v. Astrue, 667 F.3d 470, 473 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).

First, the claimant must demonstrate that she is not engaged in substantial gainful activity at the time of application. 20 C.F.R. § 404.1520(b). Second, the claimant must prove that she has "a severe impairment . . . which significantly limits . . . [her] physical or mental ability to do basic work activities." Id. § 404.1520(c). Third, if the claimant's impairment matches or equals an impairment listed in appendix one of the Act, and the impairment lasts—or is expected to last—for at least twelve months, then the claimant is disabled. Id. §§ 404.1509, 404.1520(d); see 20 C.F.R. pt. 404 subpart P app. 1 (listing impairments). If, however, the impairment does not meet one of those listed, then the ALJ must determine the claimant's residual functional capacity ("RFC"). The RFC is determined based on all medical or other evidence in the record of the claimant's case. Id. § 404.1520(e). Fourth, the claimant's RFC is compared with the "physical and mental demands of [the claimant's] past relevant work." Id. § 404.1520(f). If it is determined that the claimant cannot meet the demands of past relevant work then, fifth, the claimant's RFC and vocational factors are considered to determine if she can make an adjustment to other work. If the claimant cannot make such an adjustment, then she is disabled for purposes of the Act. Id. § 404.1520(g)(1).

The Court's review of this five–step inquiry is limited to determining whether: (1) the decision was supported by substantial evidence on the record; and (2) the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Johnson, 434 F.3d at 653. If the Commissioner's decision is not supported by substantial evidence in the record, or if the ALJ has made an error of law, the Court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517

(4th Cir. 1987). In deciding whether to uphold the Commissioner's final decision, the Court considers the entire record, "including any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record.'" Meyer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011) (quoting Wilkins v. Sec'y, Dept. of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson, 434 F.3d at 653 (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)) (internal quotations omitted). Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). In performing its review, the court does "'not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ].'" Hancock, 667 F.3d at 472 (quoting Johnson, 434 F.3d at 653) (alteration in original). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Id. (quoting Johnson, 434 F.3d at 653) (alteration in original).

V. ANALYSIS

Plaintiff objects to the R&R on two grounds. First, Plaintiff argues that she did not waive her right to challenge the appointment of the ALJ who adjudicated her claim as a violation of the Appointments Clause. ECF No. 36 at 1. Second, Plaintiff argues that the Magistrate Judge's finding that Plaintiff does not meet the criteria of 12.05 should be rejected. Id. at 9.

**A. OBJECTION ONE: MS. SHELTON DID NOT WAIVE HER RIGHT TO CHALLENGE THE APPOINTMENT OF THE ALJ WHO ADJUDICATED HER CLAIM AS A VIOLATION OF THE APPOINTMENTS CLAUSE.**

Plaintiff objects to the R&R for recommending that the Court find that Plaintiff waived her Appointments Clause challenge to the ALJ who adjudicated her claim by failing to raise it before the agency during the course of the administrative proceeding. Pl.s' Objs. at 1, ECF No. 36. Plaintiff set forth this argument before Magistrate Judge Krask in Plaintiff's Second Motion for Summary Judgment. See Mem. Supp. Pl.'s Second Mot. Summ. J. at 12, ECF No. 31. Plaintiff argued the following in support of summary judgment:

(1) Plaintiff has not waived her claim that the ALJ who decided her claim was not constitutionally appointed to his office.

(a) Issue exhaustion does not apply to proceedings before the Appeals Council.

(b) Administrative law exhaustion is not required by any statute or regulation that governs Social Security disability claims and appeals.

(c) No judicially-created administrative issue exhaustion doctrine requires disability claimants to raise all issues at the hearing level in order to preserve them on appeal.

ECF No. 31 at 9–12. Following the release of Magistrate Judge Krask's Report and Recommendation, Plaintiff now makes this objection to rehash her arguments, asserting that "[t]he Magistrate Judge has simply lost his way in arriving at his recommendation." Pl.s' Objs. at 9, ECF No. 36. The arguments in support of Plaintiff's objection are as follows:

(1) Ms. Shelton did not waive her right to challenge the appointment of the ALJ who adjudicated her claim as a violation of the Appointments Clause.

(a) Issue exhaustion is not required by statute or regulation.

(b) There is not, nor should there be, a judicial doctrine requiring issue exhaustion in social security cases.

Although Plaintiff takes issue with Magistrate Judge Krask's interpretation of relevant case law and regulations,[10] Plaintiff's brief outlining her objections is, distilled to its essence, a reiteration of the memorandum submitted to Magistrate Judge Krask. As noted, the Court may reject such rehashed arguments. Hartfield v. Colvin, No. 2:16–CV–431, 2017 WL 4269969, at *7 (E.D. Va. Sep. 26, 2017) (citing Gonzalez–Ramos v. Empresas Berrios, Inc., 360 F. Supp. 2d 373, 376 (D. Puerto Rico 2005)); see also Nichols v. Colvin, 100 F. Supp. 3d 487, 497 (E.D. Va. 2015) (holding that "[a] mere restatement of the arguments raised in the summary judgment filings does not constitute an objection for the purposes of district court review.").

Nevertheless, the Court has reviewed this objection de novo and adopts and approves the Magistrate Judge's Report and Recommendation.

Relying on the Supreme Court's decision in Lucia v. SEC, 138 S. Ct. 2044 (2018), Plaintiff argued that the ALJ, as an "inferior officer" subject to the Appointments Clause of the Constitution rather than merely an employee, was required to be appointed by the Commissioner of Social Security. Mem. Supp. Pl.'s Second Mot. Summ. J. at 12, ECF No. 31 at 9–12. Plaintiff argued that the ALJ's decision was void because the ALJ allegedly held no such appointment at the time he rejected Plaintiff's supplemental security income claim. Id. at 12. However, Plaintiff failed to challenge the propriety of the ALJ's appointment before the SSA and, after seeking judicial review, first raised the issue on September 25, 2018, when seeking leave to amend her complaint. ECF No. 18–1 at 2–3. Magistrate Judge Krask's Report and Recommendation concluded that "Plaintiff forfeited her constitutional challenge to the allegedly defective appointment of ALJ

---

[10] Plaintiff makes such assertions as "[t]he cases simply do not say what Magistrate Judge Krask wants them to say[,]" "the Magistrate Judge's discussion of Eldridge is confusing[,]" and "[t]he Magistrate Judge's effort to distinguish Sims . . . is not specifically elaborated or explained, so it is not possible to comment on this assertion beyond wondering what he meant by it." ECF No. 36 at 3–4, 8.

Goldstein when she failed to raise the claim during the administrative process and no basis exists for excusing that forfeiture." [11]  R&R at 21, ECF No. 35.  As Magistrate Judge Krask noted, in addition to his other thoroughly articulated findings, the majority of courts have found that "[j]udicial adherence to an exhaustion requirement is appropriate in the context of this case[,]" such requirement should be applied to reject a constitutional challenge to the appointment of an SSA ALJ that was not made during the administrative process, and there is no reason to excuse Plaintiff's non-compliance.  See Parker R&R, 4:17cv143, ECF No. 39 at 20–38; see also Parker v. Berryhill, No. 4:17cv143, (E.D. Va. Mar. 21, 2019), ECF No.  44 (adopting Magistrate Judge Krask's R&R).

As such, the Court adopts and approves the Magistrate Judge's findings and recommendation for the reasons stated in the Report and Recommendation.

### B.  OBJECTION TWO: THE MAGISTRATE JUDGE'S FINDING THAT MS. SHELTON DOES NOT MEET THE CRITERIA OF 12.05 SHOULD BE REJECTED.

Plaintiff objects to the R&R's finding that Plaintiff does not meet the criteria of Listing 12.05.  Pl.s' Objs. at 9, ECF No. 36.  Plaintiff argues that this decision is "unsupported by substantial evidence, and that deficits in adaptive functioning were apparent prior to [Plaintiff] reaching the age of 22."  Id.  Plaintiff set forth this argument before Magistrate Judge Krask in Plaintiff's Second Motion for Summary Judgment.  See Mem. Supp. Pl.'s Second Mot. Summ. J. at 22, ECF No. 31 ("The ALJ's determination that Ms. Shelton does not meet the criteria[] of Listing 12.05 is not supported by substantial evidence.").  Magistrate Judge Krask determined that

---

[11]  Magistrate Judge Krask thoroughly explained his reasoning in the Court's report and recommendation filed in Parker v. Berryhill, No. 4:17cv143 (E.D. Va. Jan. 23, 2019) (hereinafter "Parker R&R"), which was adopted by the Court on March 21, 2019.  As Magistrate Judge Krask noted, the plaintiff in Parker v. Berryhill is represented by the same counsel as Plaintiff here.  As a result, the same arguments are presented in both cases with respect to the Appointments Clause constitutional challenge.  R&R at 21, ECF No. 35 (comparing Mem. Supp. Pl.'s Second Mot. Summ. J. (ECF No. 31) and Mem. Supp. D's Second Mot. Summ. J. (ECF No. 33), with Parker v. Berryhill, No. 4:17cv143 (E.D. Va. Dec. 15, 2017), ECF Nos. 32, 37)).

the ALJ properly considered Plaintiff's work history, ability to function independently, school records, IQ scores, and several expert opinions in determining that the record does not indicate that Plaintiff "had an intellectual disability before age 22." R&R at 25–37, ECF No. 35 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05 (2016)). Noting that this Court is not to reweigh the evidence, Magistrate Judge Krask found that "the appropriate legal standard was applied, and substantial evidence supports the ALJ's finding that [Plaintiff] does not meet the criteria of listing 12.05[,]" requiring that "deficits in adaptive functioning initially manifested . . . before age 22." Id. at 25, 38 (internal quotations omitted).

Plaintiff now makes an objection in order to rehash her arguments. As noted, the Court may reject such rehashed arguments. Hartfield v. Colvin, No. 2:16–CV–431, 2017 WL 4269969, at *7 (E.D. Va. Sep. 26, 2017) (citing Gonzalez–Ramos v. Empresas Berrios, Inc., 360 F. Supp. 2d 373, 376 (D. Puerto Rico 2005)); see also Nichols v. Colvin, 100 F. Supp. 3d 487, 497 (E.D. Va. 2015) (holding that "[a] mere restatement of the arguments raised in the summary judgment filings does not constitute an objection for the purposes of district court review.").

Nevertheless, the Court has reviewed this objection de novo and finds Plaintiff's arguments unpersuasive. As Plaintiff notes, because "[b]oth the ALJ and the Magistrate Judge accept that there is a valid IQ test showing that [Plaintiff] has a full IQ of 59 or less," the issue is whether "the evidence establishes that she demonstrated deficits in adaptive functioning initially manifested" before age 22. Pl.s' Objs. at 9, ECF No. 36 (internal quotations removed). Upon a thorough review of the record, this Court finds that substantial evidence supports the ALJ's finding that Plaintiff did not show deficits in adaptive functioning that initially manifested before age 22 and therefore, Plaintiff did not meet the criteria of listing 12.05.

For these reasons, and those set forth in the R&R, the Court adopts and approves the Magistrate Judge's findings and recommendation.

## VI.     CONCLUSION

The Court, having examined the Objections and Response to the Objections to the Report and Recommendation and having made <u>de novo</u> findings with respect thereto: (1) **ACCEPTS** the R&R, ECF No. 35; (2) **DENIES** Plaintiff's Second Motion for Summary Judgment, ECF No. 30; (3) **GRANTS** Defendant's Second Motion for Summary Judgment, ECF No. 32; and (4) **AFFIRMS** the decision of the Commissioner of the Social Security Administration.

The Clerk is **DIRECTED** to enter judgment in favor of defendant and to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED**.

/s/
Robert G. Doumar
Senior United States District Judge

UNITED STATES DISTRICT JUDGE

Norfolk, VA
March 25, 2019

25